263 P.3d 1233 (2011)
STATE of Washington, Respondent,
v.
Chucco L. ROBINSON, Petitioner.
No. 83444-0.
Supreme Court of Washington, En Banc.
Argued October 19, 2010.
Decided October 6, 2011.
Tracy Scott Collins, Attorney at Law, Spokane, WA, for Petitioner.
Mark Erik Lindsey, Spokane County Prosecutor's Office, Spokane, WA, for Respondent.
CHAMBERS, J.
¶ 1 Chucco Robinson erroneously believed that his earlier juvenile convictions had washed out and no longer counted toward his offender score. Based upon this understanding and after extensive negotiations, largely focused on an offender score that would lead to a mutually acceptable sentence, he pleaded guilty. Before sentencing, he learned that his juvenile convictions would count toward his offender score, significantly increasing the statutory sentencing range he faced. Robinson immediately moved to withdraw his plea. After a hearing, the trial court granted *1234 the motion, finding that Robinson's misunderstanding of the consequences of Washington sentencing law was reasonable, though erroneous, and that Robinson's plea was not made knowingly, voluntarily, and intelligently. The State contends, successfully below, that the trial judge abused her discretion when she allowed Robinson to withdraw his plea. We find the ruling was within the sound discretion of the trial court. We reverse the Court of Appeals and remand for further proceedings consistent with this opinion.

FACTS
¶ 2 Robinson's formal criminal history starts in 1991 when he was 14 years old. That year he accumulated four convictions: two for assault, one for taking a motor vehicle without permission, and one for reckless endangerment.[1] In 1994, when Robinson was 17, he was convicted of second degree murder. He was told at the time that his previous convictions would not be used to calculate his offender score because he committed the crime when he was younger than 15.
¶ 3 Very early one morning, just months after he completed his sentence for murder, Robinson knocked on the door of a woman he had recently met. When she opened the door, he entered, uninvited, and attempted to sexually assault her. She fought back and he left. She called the police. He was charged with first degree attempted rape, burglary, and kidnapping.
¶ 4 Robinson's defense counsel and the prosecutor attempted to negotiate a plea. Accordingly to defense counsel, "negotiations. . . revolved around the sentencing range. . . . with the specific intent of getting Mr. Robinson into a sentencing range that was acceptable to all parties involved." Clerk's Papers (CP) at 52. It appears that neither attorney was aware of Robinson's early juvenile criminal history. According to the record, Robinson reasonably believed the law at the time of his 1994 sentencing excluded his earlier crimes. The trial court in this case found that Robinson believed "that those convictions were no longer on his criminal record, and that they could never be used against him again for any sentencing purpose." CP at 40.
¶ 5 However, the law regarding scoring juvenile criminal history had changed while Robinson was in prison. Former RCW 9.94A.030 (1994); State v. Smith, 144 Wash.2d 665, 671, 30 P.3d 1245, 39 P.3d 294 (2001) (holding that the definition of "criminal history" in former RCW 9.94.030 did not include defendants' washed out juvenile convictions), abrogated by State v. Varga, 151 Wash.2d 179, 86 P.3d 139 (2004) (discussing former RCW 9.94A.030 (2002); Laws of 2002, ch. 107 § 2(13)). When Robinson entered his guilty plea in this case, his 1994 juvenile convictions did count toward his offender score. Former RCW 9.94A.525 (2008); In re Pers. Restraint of LaChapelle, 153 Wash.2d 1, 12, 100 P.3d 805 (2004) (holding that "[u]nder the current [Sentencing Reform Act of 1981, ch. 9.94A RCW], no offender has a vested right in the definition of criminal history in effect when a previous crime was committed"); Varga, 151 Wash.2d at 191, 86 P.3d 139 (noting that the 2002 legislature intended to include previously washed out convictions in current offender score calculations).
¶ 6 During plea negotiations, the State and Robinson both appeared to have calculated Robinson's existing offender score by simply adding his murder conviction to his 1994 score of zero.[2] In order to arrive at a sentencing range that was acceptable to both sides, Robinson agreed to plead guilty to first degree burglary and to enter a Barr plea to third degree rape. In re Pers. Restraint of Barr, 102 Wash.2d 265, 270, 684 P.2d 712 *1235 (1984);[3] CP at 12, 52. The State agreed to drop the kidnapping charge and filed a substitute information reflecting the reduced charges. As part of his guilty plea, Robinson signed a document titled "Understanding of Defendant's Criminal History" (Understanding). In it, he agreed that "each of the listed convictions count[ed] in the computation of the offender score" and that the Understanding "does not limit the use of additional criminal history if later ascertained." CP at 61. The "Statement of Defendant on Plea of Guilty" also said:
The standard sentence range is based on the crime charged and my criminal history. Criminal history includes prior convictions and juvenile adjudications or convictions. . . if any additional criminal history is discovered [before sentencing], both the standard sentence range and the prosecuting attorney's recommendation may increase. Even so, my plea of guilty to this charge is binding on me. I cannot change my mind if additional criminal history is discovered even though the standard sentencing range and the prosecuting attorney's recommendation increase.
CP at 12 (emphasis added).
¶ 7 The Understanding does not list any of Robinson's 1991 juvenile convictions. It does list Robinson's 1994 felony conviction for second degree murder. Robinson affirmed at the plea hearing that the Understanding was true and correct to the best of his knowledge. Robinson signed the plea agreement and affirmed at the time of his plea that he had reviewed it carefully with his attorney and that he understood its contents.
¶ 8 The court accepted the plea and ordered a presentence report. The community corrections officer who conducted the presentence investigation reviewed four different databases and discovered the undisclosed juvenile convictions. The discovery of four undisclosed juvenile convictions increased the standard sentence range on the burglary conviction to 87-116 months (from 31-41 months) and the rape conviction to 41-54 months (from 13-17 months).
¶ 9 Before sentencing, and four days after being informed that the State would be seeking a sentence in a standard range that was nearly triple the negotiated sentencing range, Robinson moved to withdraw his plea, alleging a legal mistake. The court held a hearing to consider the motion. It agreed with the State that "[n]ow that we have . . . discovered that those crimes did in fact occur, and pursuant to current statute they should be counted in the calculation of the offender score." Verbatim Record of Proceedings (VRP) at 28. But it also agreed with Robinson that given the substantially different standard range and the understandable mistake, "the plea was not made knowingly, intelligently, and voluntarily," and granted the motion. Id. at 28-29. In its written findings of fact and conclusions of law, the trial court elaborated that it was granting Robinson's motion because (1) his "failure to disclose the prior juvenile convictions was based on a mistaken belief as to the law that those convictions had `washed' prior to his 1994 sentencing"; (2) the Understanding was inaccurate; and (3) the defendant's guilty plea was not "knowing, voluntary or intelligently made due to [Robinson's] mistaken belief that the prior juvenile offenses had `washed,' [resulting in a] substantial increase in the sentencing range." CP at 40-41. With the court's permission, the substitute information charging the lesser charges was withdrawn, leaving Robinson facing the original first degree charges of attempted rape, kidnapping, and burglary.
¶ 10 The State appealed. In a published opinion, the Court of Appeals reversed and remanded for sentencing. State v. Robinson, 150 Wash.App. 934, 210 P.3d 1045 (2009). The Court of Appeals held that because Robinson failed to disclose his juvenile offense history, he "assumed the contractual risk fixed in his plea agreement that the discovery of additional criminal history would increase his offender score and standard sentencing range." Id. at 940, 210 P.3d 1045 *1236 (citing State v. Codiga, 162 Wash.2d 912, 928, 175 P.3d 1082 (2008)). We accepted review. State v. Robinson, 167 Wash.2d 1017, 224 P.3d 773 (2010).

ANALYSIS
¶ 11 Due process requires that a guilty plea may be accepted only upon a showing the accused understands the nature of the charge and enters the plea intelligently and voluntarily. State v. A.N.J., 168 Wash.2d 91, 117, 225 P.3d 956 (2010) (citing In re Pers. Restraint of Mendoza Montoya, 109 Wash.2d 270, 277, 744 P.2d 340 (1987); Boykin v. Alabama, 395 U.S. 238, 242-43, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)). A trial court may not accept a guilty plea without first determining that a criminal defendant has entered into the plea "voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea." CrR 4.2(d); see also State v. Ross, 129 Wash.2d 279, 284, 916 P.2d 405 (1996) (stating that for a plea to be knowing and voluntary, a criminal defendant must be informed of all direct consequences of his plea). A defendant does not knowingly plead guilty when he bases that plea on misinformation regarding sentencing consequences. State v. Miller, 110 Wash.2d 528, 531, 756 P.2d 122 (1988) overruled on other grounds by State v. Barber, 170 Wash.2d 854, 248 P.3d 494 (2011). However, generally, a defendant accepts the risk that additional criminal history will be discovered prior to sentencing. Codiga, 162 Wash.2d at 928, 175 P.3d 1082. The defendant is not, however, "burdened with assuming the risk of [a] legal mistake." Id. at 929, 175 P.3d 1082.
¶ 12 "Mistake" is not the only ground for withdrawing a plea. CrR 4.2(f); CrR 7.8. Under our current criminal rules, "[t]he court shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice." CrR 4.2(f).[4] "This court will overturn a trial court's denial of a motion to withdraw a plea only for abuse of discretion." State v. Bao Sheng Zhao, 157 Wash.2d 188, 197, 137 P.3d 835 (2006) (citing State v. Marshall, 144 Wash.2d 266, 280, 27 P.3d 192 (2001)).
¶ 13 Since the Court of Appeals considered this case, we have reviewed the history of the standard we apply to a motion to withdraw a plea. A.N.J., 168 Wash.2d at 106-07, 225 P.3d 956. Prior to the adoption of CrR 4.2(f), this court followed a dual standard for analyzing motions to withdraw pleas depending on when the motion was made. A more liberal standard was applied if the defendant moved to withdraw before sentencing. The motion was addressed to the sound discretion of the court "to be exercised liberally in favor of life and liberty." State v. Hensley, 20 Wash.2d 95, 101, 145 P.2d 1014 (1944) (citing State v. Cimini, 53 Wash. 268, 101 P. 891 (1909)); former RCW 10.40.175 (1881), repealed by Laws of 1984, ch. 76, § 27. Following the adoption of CrR 4.2(f), we abandoned the dual standard in favor of a singular, and more stringent, standard of allowing "`a defendant to withdraw his plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice.'" State v. Taylor, 83 Wash.2d 594, 595, 521 P.2d 699 (1974) (quoting CrR 4.2(f)). We adopted the uniform standard because an examination of other rules connected to CrR 4.2(f) "prevents a court from accepting a plea of guilty until it has ascertained that it was `made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea.'" Taylor, 83 Wash.2d at 596, 521 P.2d 699 (quoting CrR 4.2(d)). Thus, we felt, there were sufficient *1237 safeguards present before a plea was accepted to protect the defendant against involuntary pleas.
¶ 14 Since 1974, the law has become more complicated. See LaChapelle 153 Wash.2d at 7, 100 P.3d 805 (noting that the Sentencing Reform Act of 1981 had been amended 181 times between 1981 and 2004). In A.N.J., we explained that
a claim by a defendant that he did not understand the consequences of his plea may simply be more credible if made before sentencing than it would be if the defendant rolls the dice on a favorable sentence and is disappointed. We adhere to the single manifest injustice standard. But the timing of a motion may be considered by the court together with all other evidence bearing on the issue. However, the timing of the motion should be given weight only when it is made promptly after discovery of the previously unknown consequences or the newly discovered information. Timing should be given particular weight if the motion is made before any other benefit to the defendant or detriment to the State is known, and if the motion is grounded in the core concerns recognized in Taylor, [83 Wash.2d at 596, 521 P.2d 699,] whether the plea was voluntary, knowingly and intelligently made, and made with an understanding of the nature of the charge and the consequences of the plea. See generally id.

A.N.J., 168 Wash.2d at 107, 225 P.3d 956.
¶ 15 The Court of Appeals' opinion was published before A.N.J. was announced, and the State has not briefed the impact of that recent opinion on this case. In its pre-A.N.J. briefing, the State relied on Codiga to argue that the defendant had contractually assumed the risk that additional criminal history would be found. Codiga, 162 Wash.2d at 928, 175 P.3d 1082. We find that Codiga is consistent with the trial court's decision allowing Robinson to withdraw his guilty plea. We recognize that there are some factual similarities. In Codiga, the defendant pleaded guilty to three counts of first degree child molestation. Id. at 916, 175 P.3d 1082. He disclosed his felony criminal history during plea negotiations. Id. at 919, 175 P.3d 1082. He did not disclose his misdemeanors. Id. at 920, 175 P.3d 1082. But for those misdemeanors, one of Codiga's prior offenses would have washed out. Id. After he was sentenced, Codiga moved to withdraw his plea on several grounds, including that he was not informed of the consequences of his plea. Id. at 921, 175 P.3d 1082. Given that Codiga had already been sentenced, the trial court transferred the motion to the Court of Appeals for consideration as a personal restraint petition. Id. We noted that under the plea agreement, Codiga had contractually assumed the risk that additional criminal history would be found. Id. at 928, 175 P.3d 1082. We concluded that "[a]llowing the defendant to assume this risk is both fair and reasonable." Id. But we also concluded that "a defendant should not be charged with knowing the legal impact of his or her criminal history on the offender score. Where a criminal history is correct and complete, but the attorneys miscalculate the resulting offender score, then the defendant should not be burdened with assuming the risk of legal mistake." Id. at 929, 175 P.3d 1082. Under the circumstances, we found that Codiga had "not established a manifest injustice sufficient to warrant withdrawal of the plea." Id. at 930, 175 P.3d 1082.
¶ 16 Codiga is different from the case at bar in three critical ways. First, a review of the opinion and the briefs filed in Codiga reveals that he offered no explanation for why he did not disclose his prior offenses. By contrast, the trial judge found Robinson reasonably believed that his juvenile convictions did not count as part of his criminal history. Second, Codiga waited until after sentencing to move to withdraw his plea. Id. at 921, 175 P.3d 1082. Robinson, like A.N.J., moved immediately upon learning of the mistake and before sentencing. CP at 31; A.N.J., 168 Wash.2d at 96, 225 P.3d 956. And perhaps most critically, in this case, the trial judge found that the plea was not knowing and voluntary and concluded that allowing the plea to stand would be a manifest injustice. The trial court's judgment is reviewed for abuse of discretion. Zhao, 157 Wash.2d at 197, 137 P.3d 835 (citing Marshall, 144 Wash.2d at 280, 27 P.3d 192). No *1238 trial court findings of manifest injustice appear in Codiga. The question of deference to a trial court's exercise of discretion did not arise.
¶ 17 Again, due process requires that a defendant's guilty plea be knowing, voluntary, and intelligent. In re Pers. Restraint of Isadore, 151 Wash.2d 294, 297, 88 P.3d 390 (2004) (citing Boykin, 395 U.S. at 242, 89 S.Ct. 1709). We typically regard valid plea agreements as binding contracts. In re Pers. Restraint of Breedlove, 138 Wash.2d 298, 309, 979 P.2d 417 (1999) (citing State v. Talley, 134 Wash.2d 176, 182, 949 P.2d 358 (1998)). However, we permit "`a defendant to withdraw his plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice.'" Taylor, 83 Wash.2d at 595, 521 P.2d 699 (quoting CrR 4.2(f)). The timing of a defendant's motion to withdraw should be given weight when the motion is made promptly after discovery of a previously unknown consequence. A.N.J., 168 Wash.2d at 107, 225 P.3d 956. Here, Robinson promptly moved to withdraw his plea after he discovered that the law now counted his previously "washed" juvenile convictions.
¶ 18 Not only does the timing of Robinson's motion support the trial court's determination that his guilty plea was not knowing, voluntary, or intelligent, but also the trial court's decision was entirely reasonable. As the trial judge noted, "[I]t was eminently reasonable for Mr. Robinson to believe that these convictions no longer existed against him. They were not used against him when he was sentenced in 1994 on a murder charge; why would he think that they could be used against him in 2008 on lesser felony charges?" VRP at 28. We agree.

CONCLUSION
¶ 19 Robinson quickly moved to withdraw his guilty plea upon discovering his mistake. The trial court found his mistake was reasonable under the circumstances and that to enforce the plea would be manifestly unjust. We find no abuse of discretion. We reverse the Court of Appeals and remand to the trial court for further proceedings consistent with this opinion.
WE CONCUR: GERRY L. ALEXANDER, SUSAN OWENS, MARY E. FAIRHURST, Justices, and RICHARD B. SANDERS, Justice Pro Tem.
¶ 20 J.M. JOHNSON, J. (dissenting).
¶ 21 Chucco Robinson signed a guilty plea agreement that expressly provided "Criminal history includes prior convictions and juvenile adjudications or convictions." Clerk's Papers (CP) at 12 (emphasis added). At his plea hearing, Robinson affirmed he carefully reviewed the plea agreement with his attorney before signing it. Verbatim Report of Proceedings (Feb. 20, 2008) at 4. He also stated that he understood its contents completely. Id.
¶ 22 Robinson knew of all of his juvenile convictions and told his attorney about them before plea negotiations began. He chose not to disclose them to the State. Robinson now claims he did not know that in addition to his adult conviction for second degree murder, his four (and possibly five) juvenile convictions count as criminal history for purposes of calculating his offender score. Contrary to the majority's conclusion, the trial court's holding that Robinson's plea was not knowing, voluntary, and intelligent is in direct conflict with our case law, particularly State v. Codiga, 162 Wash.2d 912, 175 P.3d 1082 (2008). The trial court's decision, therefore, was an error of law. The trial court abused its discretion by concluding it would be a manifest injustice to allow Robinson's plea to stand and by allowing Robinson to withdraw his plea.
¶ 23 Because the record before us demonstrates Robinson's plea was knowing, voluntary, and intelligent, judgment should be entered and Robinson should be sentenced according to the terms of the plea agreement. I dissent.

ANALYSIS
¶ 24 The issue before us is whether the trial court abused its discretion in concluding it would be a manifest injustice to allow Robinson's plea to stand and in allowing him to withdraw his plea. State v. Bao Sheng *1239 Zhao, 157 Wash.2d 188, 197 n. 5, 137 P.3d 835 (2006) (the defendant "must show the trial court abused its discretion in concluding there was no manifest injustice justifying withdrawal of the plea"). In State v. A.N.J., 168 Wash.2d 91, 107, 225 P.3d 956 (2010), we affirmed that courts shall allow a defendant to withdraw his or her plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice. We have held that a manifest injustice exists at least where (1) the plea was not ratified by the defendant, (2) the plea was not voluntary, (3) effective assistance of counsel was denied, or (4) the plea agreement was not kept. State v. Wakefield, 130 Wash.2d 464, 472, 925 P.2d 183 (1996). A manifest injustice has also been defined as "an injustice that is obvious, directly observable, overt, not obscure." State v. Taylor, 83 Wash.2d 594, 596, 521 P.2d 699 (1974) (citing Webster's Third New International Dictionary (1966)).[1]
¶ 25 Robinson argues that his plea was not knowing, voluntary, and intelligent because he allegedly did not know his juvenile convictions count as criminal history. Based on the record and our precedent in Codiga, however, the trial court made an error of law when it determined Robinson's plea was not knowing, voluntary, and intelligent. It abused its discretion when it allowed Robinson to withdraw his plea.
¶ 26 The law was clear at the time of Robinson's plea that all of his juvenile convictions count as criminal history. In re Pers. Restraint of LaChapelle, 153 Wash.2d 1, 12, 100 P.3d 805 (2004); former RCW 9.94A.525 (2008); see also State v. Varga, 151 Wash.2d 179, 86 P.3d 139 (2004) (discussing former RCW 9.94A.030 (2002)).
¶ 27 Robinson knew of all of his convictions and chose not to disclose his convictions to the State, although he did tell his attorney about them before plea negotiations began. This resulted in a factual error the court must correct at sentencing, not a legal mistake that renders a plea agreement not knowing, voluntary, and intelligent. Codiga, 162 Wash.2d at 928-30, 175 P.3d 1082. Robinson signed a plea agreement that explained that juvenile convictions counted as part of his criminal history and that the standard sentencing range could be increased if they were discovered. Robinson told the court that he carefully reviewed the plea agreement with his attorney before signing it and stated that he understood its contents completely. Although a defendant is not automatically charged with knowing the legal impact of criminal history, he or she is under a statutory and contractual obligation to provide an accurate statement of criminal history. Id. at 928, 175 P.3d 1082; RCW 9.94A.441. Robinson failed to do so.
¶ 28 An error of law can constitute an abuse of discretion.[2] Here, the trial court abused its discretion when it concluded that allowing Robinson's plea to stand would be a manifest injustice and allowed Robinson to withdraw his plea. The trial court made this decision without considering all of the supported facts (most notably the specific language in the plea agreement itself) and without applying our latest case on the issue, Codiga.[3]

A. The Trial Court's Holding Is Inconsistent with Codiga

¶ 29 This case is not distinguishable from Codiga in a legally meaningful way. In Codiga, the defendant agreed to plead guilty in exchange for the dismissal of two charges, which resulted in a particular standard sentencing range. Codiga, 162 Wash.2d at 917, 175 P.3d 1082. The sentencing range was based on the State's understanding of Codiga's criminal history. Id. at 917-18, 175 P.3d 1082. However, similar to Robinson, Codiga disclosed his felony convictions during plea *1240 negotiations, but not his misdemeanors. See id. at 920, 175 P.3d 1082. This led the State to believe one of Codiga's felonies had "washed out," to which the defense agreed. Id. at 919, 175 P.3d 1082.
¶ 30 As here, the plea agreement defined criminal history as "`prior convictions and juvenile adjudications or convictions, whether in this state, in federal court, or elsewhere.'" Id. at 918, 175 P.3d 1082 (quoting CP at 9). The form also provided that "`if any additional criminal history is discovered [before sentencing], both the standard sentence range and the prosecuting attorney's recommendation may increase. Even so, my plea of guilty to this charge is binding upon me. I cannot change my mind if additional criminal history is discovered.'" Id. (quoting CP at 9).
¶ 31 Like this case, the judge spoke directly with Codiga at the plea hearing, confirmed that he had read the plea form carefully and discussed it with his attorney. Id. After confirming Codiga understood his rights and engaging in the normal colloquy, the judge found the plea was knowing, voluntary, and intelligent and found there was a factual basis for the plea. Id. at 919-20, 175 P.3d 1082. As here, the Department of Corrections (DOC) completed a routine presentence investigation report and discovered Codiga's additional criminal history. Id. at 920, 175 P.3d 1082. This increased Codiga's offender score from 7 to 8, therefore increasing the standard range. Id. This discovery was not made known to Codiga at the time. See id. at 921, 175 P.3d 1082; cf. majority at 1237.
¶ 32 At the sentencing hearing, the State and the defense agreed that Codiga had an offender score of 7 (not 8) despite the DOC report. Codiga, 162 Wash.2d at 921, 175 P.3d 1082. The prosecutor soon discovered the discrepancy. Id. When the court asked Codiga whether he believed his 1996 felony conviction washed out, his defense counsel responded that they had believed it had "washed," just as Robinson claims here. Id.
¶ 33 The court imposed sentence required by Codiga's full history. Codiga quickly moved to withdraw his guilty plea, arguing that he was not accurately informed of the consequences of his plea because the standard sentence range increased between his plea and sentencing. Id. We upheld the trial court's ruling. Id. at 922-31, 175 P.3d 1082.

B. The Majority's Distinctions from Codiga Are Not Legally Meaningful

¶ 34 The majority attempts to distinguish this case from Codiga in three ways. First, the majority argues that "a review of the opinion and the briefs filed in Codiga reveals that he offered no explanation for why he did not disclose his prior offenses." Majority at 1237. This may be technically true but it is not an accurate statement. The trial court in Codiga also sought an explanation and asked Codiga whether he believed his 1996 felony conviction washed out. Codiga, 162 Wash.2d at 921, 175 P.3d 1082. Understandably, his defense counsel responded on his behalf and said that "they originally believed it did wash out." Id. Like Robinson, Codiga may have held a subjective belief that his convictions had washed, even though they had not. Furthermore, it is arguable that Codiga's failure to disclose was more reasonable than Robinson's. In both plea agreements, juvenile convictions are expressly included in the definition of "criminal history." In contrast, one must infer that misdemeanors are included in the term "prior convictions." Because the language is straightforward in one case and requires an inference in the other, it was arguably more reasonable for Codiga not to disclose his misdemeanor convictions than it was for Robinson to fail to disclose his juvenile convictions.
¶ 35 Second, the majority makes much of the fact that Codiga did not move to withdraw his plea until the sentencing hearing, while Robinson, like the defendant in A.N.J., moved to withdraw before the sentencing hearing. Majority at 1237. This suggests that Robinson's motion to withdraw was somehow more credible than Codiga's. See id. at 1237; A.N.J., 168 Wash.2d at 107, 225 P.3d 956. However, just like Robinson, Codiga promptly moved to withdraw his guilty plea after being confronted with previously unknown sentencing consequences. Thus, this "distinction" cannot be the basis on which to allow Robinson's motion to withdraw but deny Codiga's motion. See A.N.J., *1241 168 Wash.2d at 107, 225 P.3d 956 (standing for the proposition that the timing of a motion to withdraw should be given weight "only when it is made promptly after discovery of the previously unknown consequences or the newly discovered information"); see also id. at 124-25, 225 P.3d 956 (J.M. Johnson, J., concurring) (explaining that A.N.J. is a rare exception to the strong presumption that plea agreements are valid and enforceable by the courts).
¶ 36 Finally, the majority attempts to distinguish this case from Codiga because the trial court in that case found the plea was knowing, voluntary, and intelligent and did not conclude that allowing the plea to stand would be a manifest injustice. As explained above, the trial court here made an error of law when it found Robinson's plea was not knowing, voluntary, and intelligent without considering the language of the plea agreement itself and without applying Codiga. Allowing the plea to stand, therefore, is not a manifest injustice.
¶ 37 The phrase "manifest injustice" has been defined as "an injustice that is obvious, directly observable, overt, not obscure," Taylor, 83 Wash.2d at 596, 521 P.2d 699. The phrase "manifest injustice," however, represents more than a mere dictionary definition. A manifest injustice is a result that profoundly undermines the people's confidence in the justice system. Taking a defendant's previous convictions into account to arrive at an appropriate sentencing range for a given crime does not undermine confidence in the justice system.

CONCLUSION
¶ 38 Robinson's plea was knowing, voluntary, and intelligent. He stated so in open court. Robinson knew of all of his convictions and told his attorney about them before plea negotiations began. He signed a guilty plea agreement that expressly provided, "Criminal history includes prior convictions and juvenile adjudications or convictions." CP at 12 (emphasis added). At his plea hearing, Robinson affirmed that he carefully reviewed the plea agreement with his attorney before signing it. The trial court correctly found Robinson guilty of burglary in the first degree and rape in the third degree.
¶ 39 The trial court abused its discretion on Robinson's later motion to withdraw his guilty plea. The Court of Appeals ruled correctly in accord with this court's jurisprudence. I dissent.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, CHARLES W. JOHNSON, and DEBRA L. STEPHENS, Justices.
NOTES
[1] The trial judge's findings of fact allude to another conviction for taking a vehicle without permission in 1989. It is unclear how old he would have been, and it does not appear that conviction has been used in the calculation of his offender score. The record does not allow us to determine whether he had another scorable offense.
[2] Both Robinson's "First Appearance Evaluation" and his "Understanding of Defendant's Criminal History," which the State provided, listed only Robinson's felony conviction as part of his "criminal history."
[3] In Barr, we joined the courts that hold "[a] plea does not become invalid because an accused chooses to plead to a related lesser charge that was not committed in order to avoid certain conviction for a greater offense." Barr, 102 Wash.2d at 269-70, 684 P.2d 712 (citing People v. Martin, 58 Ill.App.3d 633, 374 N.E.2d 1012, 16 Ill.Dec. 237 (1978)).
[4] Robinson moved to withdraw his plea before entry of judgment and thus only needed to satisfy CrR 4.2(f). See A.N.J., 168 Wash.2d at 106, 225 P.3d 956; Codiga, 162 Wash.2d at 923 n. 3, 175 P.3d 1082. If Robinson had moved to withdraw his plea after he was sentenced and the judgment was entered, he would have also had to satisfy CrR 7.8(b), which says in most relevant part that "[on] motion and upon such terms as are just, the court may relieve a party from a final judgment, order, or proceedings for the following reasons: (1) Mistakes . . . [or] (5)[a]ny other reason justifying relief from the operation of the judgment." See Codiga, 162 Wash.2d at 923 n. 3, 175 P.3d 1082. We note in passing that once the judgment and sentence is entered, as it was in Codiga, a one year time clock begins to tick on most issues, and the trial judge has the authority to convert the motion to a personal restraint petition and transfer it to the Court of Appeals. CrR 7.8(b), (c)(2).
[1] The phrase "manifest injustice" represents more than a mere dictionary definition. A manifest injustice is a result that profoundly undermines the people's confidence in the justice system.
[2] State v. Tobin, 161 Wash.2d 517, 523, 166 P.3d 1167 (2007); see also State v. Dixon, 159 Wash.2d 65, 76, 147 P.3d 991 (2006) (quoting State v. Rohrich, 149 Wash.2d 647, 654, 71 P.3d 638 (2003)).
[3] Codiga was decided on January 31, 2008, just months before the trial court's hearing on Robinson's motion to withdraw. Codiga, 162 Wash.2d at 912, 175 P.3d 1082.