# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, Respondent, v. FERDI MAI DEGUZMAN, Appellant. | No. 71127-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: January 26, 2015 |

LEACH, J. — Ferdi DeGuzman appeals the trial court's order denying his motion to withdraw his plea of guilty to two counts of rape of a child in the second degree. DeGuzman alleges that because he misunderstood his potential sentence to be 120 to 158 days, not months, his plea was involuntary. Because the record shows that defense counsel and the State properly advised DeGuzman that he faced a standard range sentence of 120 to 158 months and that he understood the terms of his plea agreement, we conclude that he made the guilty plea voluntarily. Therefore, the trial court did not abuse its discretion by denying DeGuzman's motion to withdraw his plea. We affirm.

## Background

In May 2011, 13-year-old A.Z. told her therapist that her mother's boyfriend, Ferdi DeGuzman, was sexually molesting her. A.Z. told a police detective that beginning when she was 9 or 10 years old, DeGuzman would

make "motions" as if he were having sex with her and masturbate in front of her. He eventually began to touch her under her clothes, including touching her vagina with his hand and mouth. When the detective interviewed him, DeGuzman eventually admitted the sexual contact but blamed A.Z., maintaining that she had initiated it and "made him do things that he didn't want to do."

The State charged DeGuzman with one count of child molestation in the first degree and two counts of rape of a child in the second degree. On April 24, 2013, DeGuzman pleaded guilty to two counts of rape of a child. The plea form DeGuzman signed stated that the standard range sentence for the charged crime was 120 to 158 months with a maximum term of life in prison and that the prosecutor recommended an indeterminate sentence of 158 months to life.

At the plea hearing, the State reviewed the entire plea form with DeGuzman. DeGuzman answered, "Yes," when the prosecutor asked him if he had gone over the plea with his attorney and had enough time to consider its consequences. The prosecutor asked DeGuzman if he understood he could stop the proceedings at any time if he had a question or needed more time to talk to his attorney. DeGuzman again answered, "Yes." The prosecutor asked, "Do you understand that your decision to plead guilty here today is a final one and that you cannot change your mind in the future?" DeGuzman answered, "Correct, yes."

DeGuzman answered affirmatively when the prosecutor asked if he understood that the standard sentencing range on each count would be 120 to

158 months, that the maximum term was life in prison, and that if the judge sentenced him within the standard range, he would not be able to appeal his sentence. The prosecutor explained that DeGuzman's plea involved an indeterminate sentence, defined that term, and asked if he understood. He answered, "Yes." The prosecutor explained the terms of the plea agreement, noting that the State opposed DeGuzman's request for a special sex offender sentencing alternative (SSOSA).

After asking DeGuzman if he made his plea "freely and voluntarily," the prosecutor asked, "Do you understand that we could tear up this plea form right now and go to trial on this case if that's what you wanted?" DeGuzman answered, "Yes." When asked if anyone had attempted to induce him to accept the plea agreement by threatening him or making any promises beyond the agreement, he answered, "No." He confirmed he wished to go forward with the plea. He agreed that he adopted the factual statement in the plea form, which the prosecutor read into the record. Three different times during the plea colloquy, the prosecutor asked if he had any questions, and each time DeGuzman answered, "No."

Following the plea colloquy, the trial court noted that the prosecutor "covered everything on [the court's] checklist" but told DeGuzman, "I do want to make sure if you have any questions for me or your attorney or even the State that this is your time to ask before I accept your plea. Do you understand that?" DeGuzman answered, "Yes, I do, your Honor," and when the court asked if he

had any questions, he replied, "No, your Honor." The court accepted the guilty plea, dismissed the child molestation count, and found DeGuzman guilty of two counts of rape of a child in the second degree.

On August 7, 2013, DeGuzman filed a motion to withdraw his plea, alleging that because he had misunderstood his standard range sentence to be 120 to 158 days, not months, his plea was not voluntary. He contended that defense counsel coerced the guilty plea and that he was denied effective assistance because of lack of communication.

At the September 2013 hearing on his motion to withdraw the guilty plea, DeGuzman testified that his former defense counsel pressured him to take the plea deal, that he was "just scared" to tell his attorney he didn't want to plead guilty, and that he thought his plea would result in a sentence of "124 to 148 days." He also testified that he "thought [the sentence] was going to be six to eight months" in prison. In support of his argument that he misunderstood his potential sentence, DeGuzman offered audiotapes of jail telephone conversations with his girlfriend, A.Z.'s mother, in which the couple discusses plans to be together the following summer.

DeGuzman acknowledged, however, that when his counsel talked to him about his potential sentence, "[S]he would say it in years," and that he thought she had said that if he lost at trial his sentence could be 13 to 17 years.[1] He also

---

[1] DeGuzman appears also to testify on redirect that he understood that the court could sentence him to 13 to 17 years even with a plea deal.

testified that in early discussions, his attorney urged him to take a plea deal that would entail a seven- or eight-year sentence. And he did not dispute the State's observation that over the course of more than a year of representation, he never complained about any problem communicating with his attorney.

Though he testified on direct examination that he had "never been in this kind of circumstantial position before," DeGuzman conceded during cross-examination that in 2001 and 2004, he pleaded guilty to felony crimes and signed similar plea forms. He conceded that the State had asked him if he had any questions and that he had answered, "No." He acknowledged understanding that the trial court has discretion in sentencing and might not grant his request for a SSOSA.

The trial court denied DeGuzman's motion to withdraw his guilty plea:

> If we allowed a defendant to withdraw a plea based simply on the kind of testimony that Mr. DeGuzman has offered, almost no plea would stand. And I simply don't find his statements credible and I don't find them persuasive, and . . . in many instances they're contradictory.

The court opined that DeGuzman's telephone statements to A.Z.'s mother showed not that DeGuzman misunderstood his sentence but rather that "he's trying to diminish what he's done and he's trying to diminish the seriousness of his crime and he's also trying to diminish the consequence that he could be in jail for over a decade." The court also noted its own impressions from the plea hearing:

> And I appreciate the fact that I'm the judge that's reviewing this request because, you know, obviously, I was the judge that saw Mr.

DeGuzman the day that I accepted his plea. He did not appear to me in the slightest to be someone that was under coercion, that was in fear of his attorney, that didn't think that he could proceed to trial.

On November 1, 2013, the trial court denied DeGuzman's request for a SSOSA, imposing a sentence of 144 months. DeGuzman appeals the court's denial of his motion to withdraw his guilty plea.

## Analysis

"Due process requires an affirmative showing that a defendant entered a guilty plea intelligently and voluntarily."[2] The defendant must understand the nature of the charges and the direct consequences of a guilty plea, which include sentencing consequences.[3] CrR 4.2(f) allows a defendant to withdraw a plea of guilty "whenever it appears that the withdrawal is necessary to correct a manifest injustice." A manifest injustice occurs where a plea is involuntary.[4] Generally, the defendant bears the burden of proving a manifest injustice, which our Supreme Court defines as "'obvious, directly observable, overt, not obscure.'"[5] A strong public interest supports enforcement of voluntary and intelligent plea

---

[2] State v. Ross, 129 Wn.2d 279, 284, 916 P.2d 405 (1996); State v. Robinson, 172 Wn.2d 783, 794, 263 P.3d 1233 (2011); U.S. CONST. amend. XIV, §1; WASH. CONST. art. I, § 3.

[3] Ross, 129 Wn.2d at 284 (quoting CrR 4.2(d)); State v. Barton, 93 Wn.2d 301, 305, 609 P.2d 1353 (1980).

[4] State v. Quy Dinh Nguyen, 179 Wn. App. 271, 282, 319 P.3d 53 (2013), review denied, 181 Wn.2d 1006 (2014); Ross, 129 Wn.2d at 284. Other circumstances which may constitute a manifest injustice under CrR 4.2(f) are ineffective assistance of counsel, the defendant's failure to ratify a plea, or the prosecution's breach of a plea agreement. Quy Dinh Nguyen, 179 Wn. App. at 282.

[5] Ross, 129 Wn.2d at 283-84 (internal quotation marks omitted) (quoting State v. Saas, 118 Wn.2d 37, 42, 820 P.2d 505 (1991)).

agreements.[6] The trial court has discretion to grant or deny a motion to withdraw a guilty plea.[7]

DeGuzman contends that the trial court abused its discretion in denying his motion to withdraw his guilty plea. He argues that because he was not properly advised of the direct consequences of his guilty plea, he did not enter the plea voluntarily. We disagree.

The record shows that DeGuzman's attorney and the State thoroughly advised DeGuzman of the direct consequences of his guilty plea, including the relevant standard and maximum sentences. DeGuzman confirmed in open court that he had had sufficient opportunity to discuss the terms of the agreement with his attorney and to consider the terms of his plea. He conceded several times that his attorney explained his potential sentence in terms of years, not days.

The State reviewed the entire plea form in open court, accurately stating the standard sentencing range and the fact that the court might not grant the request for a SSOSA. The State asked DeGuzman three times if he had any questions, and the trial court likewise asked him if he had any questions for the court, the State, or his own attorney. At the end of the plea colloquy, the prosecutor informed DeGuzman that he could choose to "tear up this plea form right now and go to trial." DeGuzman denied that anyone had threatened him or made promises beyond the terms of the agreement.

---

[6] State v. Walsh, 143 Wn.2d 1, 6, 17 P.3d 591 (2001).
[7] Robinson, 172 Wn.2d at 791.

Contrary to his assertion that the prosecutor's statements about sentencing were "inconsistent and confusing," the State explained the meaning of "indeterminate sentence" and clearly stated the standard range, which DeGuzman confirmed he understood. DeGuzman had experience with the plea process, having entered guilty pleas to two previous felony charges. In short, the record contradicts DeGuzman's assertion that he "did not clearly understand the terms and consequences of the plea agreement."

DeGuzman cites several cases in support of his argument that his misunderstanding of sentencing consequences made his plea involuntary. But in the cases he cites, the defendants' guilty pleas were based on mistakes: a miscalculated offender score,[8] a legal error about the consequences of juvenile convictions,[9] or misinformation about the proper standard range sentence.[10] Here, by contrast, the record shows that defense counsel and the State correctly advised DeGuzman of the sentencing consequences of his plea. DeGuzman's case is more analogous to State v. Blanks,[11] where the defendant argued that he misunderstood the plea agreement's words, "Defendant can petition for SSOSA. State will oppose SSOSA," to mean that the agreement contained a SSOSA recommendation. In Blanks, the defendant's former defense attorney testified that "he explained the plea in great detail and that Blanks apparently

---

[8] State v. Mendoza, 157 Wn.2d 582, 584-85, 141 P.3d 49 (2006).
[9] Robinson, 172 Wn.2d at 785-86.
[10] Walsh, 143 Wn.2d at 3-4, 8-9.
[11] 139 Wn. App. 543, 551, 161 P.3d 455 (2007).

understood that the State would not recommend a SSOSA."[12] Division Two of this court held that the record supported the trial court's finding that Blanks was not a credible witness and that the case was one of "'buyer's remorse.'"[13] Here, given the detailed plea colloquy, DeGuzman's numerous opportunities to ask questions or reject the plea, and DeGuzman's own testimony, the record amply supports the trial court's finding that DeGuzman understood the consequences of his plea and thus entered it voluntarily. The court did not abuse its discretion in denying DeGuzman's motion to withdraw his guilty plea.

## Conclusion

Because the record shows that DeGuzman was fully advised of the consequences of his guilty plea and thus made his plea voluntarily, the trial court did not abuse its discretion in denying his motion to withdraw the plea. We affirm.

_Leach, J._

WE CONCUR:

---

[12] Blanks, 139 Wn. App. at 551.
[13] Blanks, 139 Wn. App. at 551.