# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47867-6-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| ROBERT ALLEN KINNEY, | |
| Appellant. | |

MAXA, A.C.J. – Robert Kinney appeals the trial court's denial of his motion to withdraw his *Alford*[1] guilty plea for first degree child molestation and the trial court's imposition of discretionary legal financial obligations (LFOs), including incarceration costs.

Kinney argues that (1) the trial court erred in denying his motion to withdraw his guilty plea because the trial court's improper denial of his constitutional right to self-representation made his guilty plea involuntary, and (2) the trial court failed to make an individualized inquiry into his ability to pay before imposing LFOs.

We hold that the trial court did not deny Kinney's right to self-representation, and therefore that the trial court did not err in denying his motion to withdraw his guilty plea. However, we hold that the trial court erred by imposing discretionary LFOs without properly inquiring into Kinney's ability to pay.

---

[1] *North Carolina v. Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

Accordingly, we affirm the trial court's denial of Kinney's motion to withdraw his guilty plea, but we remand for reconsideration of discretionary LFOs and incarceration costs.

FACTS

On July 30, 2014, the State charged Kinney with one count of first degree child rape. A jury trial was scheduled for March 2015.

*First Request for Self-Representation*

On January 29, 2015, Kinney informed Judge Hunt that he wanted to fire his defense counsel and represent himself. Kinney stated that his counsel had lied to him and had not done things Kinney asked him to do. After a colloquy with Kinney, Judge Hunt initially denied the request. However, later that day Judge Hunt called the parties back to discuss the matter further and decided to continue the hearing on Kinney's self-representation request until February 5 to allow Kinney more time to consider his options.

On February 5, defense counsel informed Judge Hunt that he had spoken with Kinney and that Kinney had decided to have defense counsel represent him. Judge Hunt inquired whether it was all right that defense counsel stay on to represent him, and Kinney responded affirmatively. Judge Hunt then struck Kinney's request for self-representation.

*Second Request for Self-Representation and Grant of Request*

On March 12, one week before trial, Kinney again asked to represent himself. During the trial confirmation hearing, Kinney told Judge Hunt that he was concerned that defense counsel would not ask the proper questions to a witness and that the truth would not come out unless Kinney himself was able to question a witness.

Judge Hunt again entered into a colloquy with Kinney regarding the risks of self-representation. He asked Kinney for final confirmation that he wished to represent himself. Kinney confirmed that he wanted to represent himself. Judge Hunt granted Kinney's request and relieved defense counsel from his duty to represent Kinney.

*Reinstatement of Defense Counsel*

On March 16, Judge Lawler called a hearing to engage in a detailed colloquy with Kinney to ensure that Kinney understood his decision to represent himself. [2] Judge Lawler explained the seriousness of the charge against Kinney and the consequences of conviction. He also explained in detail what Kinney would be expected to do at trial and how his lack of legal knowledge would seriously impair his ability to select jurors, make objections, examine witnesses, and call witnesses. Judge Lawler then asked Kinney if he was serious in wanting to represent himself. Kinney responded that he was very frustrated and began to cry.

Judge Lawler expressed that he did not want Kinney to feel pressured. Kinney explained that he was concerned that defense counsel would not ask the right questions at trial. Judge Lawler told Kinney that if defense counsel was reinstated, Kinney would be given the opportunity during trial to discuss with defense counsel what he wanted him to ask the witnesses. Kinney then said, "Well, I know you guys are trying to help so I'm going to go for it. . . . If [defense counsel] will go ahead and represent me, I guess I'll let him go for it." Report of Proceedings (RP) (March 16, 2015) at 31-32. Judge Lawler then reappointed Kinney's defense counsel, and Kinney said, "All right." RP (March 16, 2015) at 32.

---

[2] Judge Lawler was scheduled to preside over the trial. He reviewed the transcript of the earlier proceeding in which Judge Hunt granted Kinney's request to represent himself and stated that he wanted to verify for himself that Kinney truly understood the risks of self-representation.

*Third Request for Self-Representation and Withdrawal of Request*

On March 18, one day before trial, Kinney again asked to represent himself and requested a continuance in order to prepare for trial. Judge Lawler entered into another colloquy with Kinney regarding his right to represent himself. Kinney stated that he did not think that defense counsel would "have the gusto or whatever you want to call it to really get in there and dig, dig, dig." RP (March 18, 2015) at 49. But after additional discussion with Judge Lawler, Kinney withdrew his request and reaffirmed he would "go" with defense counsel for trial the next day. RP (March 18, 2015) at 50.

*Entering of Guilty Plea*

On the day of Kinney's trial, the State filed an amended information charging Kinney with first degree child molestation in exchange for Kinney's guilty plea. Kinney then entered an *Alford* guilty plea to first degree child molestation. Judge Brosey took the guilty plea.

During a colloquy with Judge Brosey, Kinney affirmed that he understood the plea. Judge Brosey found that Kinney was "competent to knowingly and intelligently, freely and voluntarily enter into the plea." RP (March 19, 2015) at 88. He also explained that Kinney's plea was "made on the advice of counsel with [Kinney's] full knowledge of the consequences and awareness of rights." RP (March 19, 2015) at 88. Judge Brosey confirmed that there was a factual basis for the guilty plea and accepted Kinney's plea.

*Motion to Withdraw Guilty Plea*

On May 18, before he was sentenced, Kinney asked to file a motion to withdraw his guilty plea and stated that he wanted to fire his counsel "for the last and final time." RP (May 18, 2015) at 4. Judge Brosey granted Kinney's request for new counsel. He did not rule on

4

Kinney's request to withdraw his guilty plea and directed Kinney to file a motion to withdraw through his newly appointed counsel. On May 28, Kinney's new defense counsel filed a written motion to withdraw Kinney's plea under CrR 4.2(f).

On June 24, Judge Brosey held a hearing on Kinney's motion to withdraw his guilty plea. After defense counsel questioned Kinney at length and after oral argument by both the State and defense counsel, Judge Brosey determined that Kinney was not entitled to withdraw his plea.

*Sentencing*

On July 14, Judge Brosey sentenced Kinney to 51 months to life in prison. During the sentencing hearing, Judge Brosey made a specific finding that Kinney was "able-bodied" and had the "ability to work and make periodic payments on financial obligations imposed by the Court." RP (July 14, 2015) at 54-55. Defense counsel informed the court that Kinney was collecting social security disability benefits. Judge Brosey responded that Kinney was able to make payments on his LFOs by diverting portions of his social security disability benefits.

In the judgment and sentence, the trial court imposed a total of $2,600 in LFOs, including a $1,800 discretionary LFO for court-appointed attorney fees. Two other orders imposed additional court appointed-attorney fees in the amounts $1,470 and $4,597.50. The judgment and sentence also included a finding that Kinney had the present means to pay costs of incarceration.

Kinney appeals his conviction and sentence.

ANALYSIS

A.    MOTION TO WITHDRAW GUILTY PLEA

Kinney argues that the trial court erred by not granting his motion to withdraw his guilty plea. He contends that his guilty plea was involuntary because the trial court deprived him of his constitutional right to self-representation. [3] We disagree.

1.    Legal Principles

Due process requires that a defendant's guilty plea be knowing, intelligent and voluntary. *State v. Robinson,* 172 Wn.2d 783, 794, 263 P.3d 1233 (2011). Under CrR 4.2(d), a trial court cannot accept a guilty plea without making a determination that the plea was made "voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea." This rule provides sufficient safeguards to protect a defendant against an involuntary plea. *Robinson,* 172 Wn.2d at 792. A strong public interest supports enforcement of voluntary and intelligently made pleas. *State v. Chambers*, 176 Wn.2d 573, 586-87, 293 P.3d 1185 (2013).

CrR 4.2(f) states that the trial court shall allow a defendant to withdraw a guilty plea before entry of judgment "whenever it appears that the withdrawal is necessary to correct a manifest injustice." *See generally Robinson,* 172 Wn.2d at 791-92, 794. Although "manifest injustice" has not been definitively defined, it includes situations where the defendant's guilty

---

[3] Kinney also seems to suggest that the trial court erred in accepting the guilty plea without applying certain enhanced requirements required for *Alford* pleas. But Kinney's assignment of error does not challenge the trial court's acceptance of the plea, and the assignment of error and argument link the invalidity of the guilty plea to the alleged denial of his right of self-representation. In addition, Kinney does not explain why the guilty plea was not knowing, voluntary, and intelligent other than to state that he maintained his innocence. Therefore, we do not address this argument.

plea was not knowing, intelligent, and voluntary. *State v. A.N.J.*, 168 Wn.2d 91, 119, 225 P.3d 956 (2010). The defendant bears the burden of proving a manifest injustice. *State v. Quy Dinh Nguyen,* 179 Wn. App. 271, 282-83, 319 P.3d 53 (2013). Because of the safeguards that precede a guilty plea, the defendant's burden is a heavy one. *State v. Wilson,* 162 Wn. App. 409, 414, 253 P.3d 1143 (2011).

We review a trial court's denial of a motion to withdraw a guilty plea for abuse of discretion. *State v. Lamb*, 175 Wn.2d 121, 127, 285 P.3d 27 (2012). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *Id.*

### 2. Kinney's Right to Self-Representation

Kinney argues that the trial court erroneously denied his constitutional right to represent himself, and therefore his guilty plea was involuntary and represented a manifest injustice. We hold that the trial court did not did not wrongfully deny Kinney's right to represent himself.[4]

### a. Legal Principles

The Sixth Amendment to United States Constitution and article I, section 22 of Washington Constitution provide criminal defendants with the right to self-representation. *State v. Madsen,* 168 Wn.2d 496, 503, 229 P.3d 714 (2010). "This right is so fundamental that it is afforded despite its potentially detrimental impact on both the defendant and the administration of justice." *Id.* For example, a trial court may not deny the defendant's right to represent

---

[4] Because of this holding, we need not decide whether a trial court's erroneous denial of a defendant's right to self-representation renders a subsequent guilty plea involuntary.

himself "based on grounds that self-representation would be detrimental to the defendant's ability to present his case." *Id.* at 505.

But the right to self-representation is not self-executing or absolute. *Id.* at 504. To invoke the right of self-representation, a defendant must unequivocally state a request to proceed without counsel. *State v. Coley,* 180 Wn.2d 543, 560, 326 P.3d 702 (2014), *cert. denied,* 135 S. Ct. 1444 (2015). The request also must be timely. *Id.* If the request for self-representation is unequivocal and timely, the trial court must then determine whether the request is voluntary, knowing, and intelligent. *Madsen,* 168 Wn.2d at 504. And the trial court must indulge in every reasonable presumption against a defendant's waiver of his right to counsel. *Id.*

The requirement that a request for self-representation be unequivocal prevents a defendant from taking advantage of the mutual exclusivity of the constitutional rights to counsel and self-representation. *See State v. Stenson*, 132 Wn.2d 668, 740-41, 940 P.2d 1239, 1276 (1997). If a defendant was permitted to vacillate between a desire to be represented by counsel and a desire to represent himself, then the defendant would have a colorable claim on appeal that a constitutional right was denied no matter who represented him at trial. *Id.* at 741; *see also State v. DeWeese*, 117 Wn.2d 369, 376, 816 P.2d 1 (1991) (stating that the requirement of an unequivocal request is necessary to "protect trial courts from manipulative vacillations by defendants regarding representation").

We review a trial court's ruling on a defendant's request for self-representation for an abuse of discretion. *Coley,* 180 Wn.2d at 559. An abuse of discretion occurs when the ruling is manifestly unreasonable, relies on unsupported facts, or applies an incorrect legal standard. *Id.*

b.   Analysis

Kinney argues that the trial court denied his right to self-representation when it (1) denied his first request during the January 29, 2015 hearing; (2) engaged in a second colloquy on March 16 after granting his request to represent himself, which resulted in Kinney stating that he would proceed with counsel; and (3) denied Kinney's request to represent himself on March 18, the day before trial.  We disagree.

First, Kinney's January 29 request to represent himself was timely and unequivocal.  But the trial court ultimately did not deny that request.  Instead, after initially denying the request the trial court continued the hearing on Kinney's self-representation request until February 5.  A trial court is entitled to defer ruling on an otherwise proper motion to self-represent.  *Madsen*, 168 Wn.2d at 504.  On February 5, Kinney stated that he wanted defense counsel to continue to represent him.  Therefore, the trial court did not violate Kinney's right to self-representation at the January 29 hearing.

Second, Kinney argues that the trial court denied his right to self-representation on March 16 by engaging in an extensive colloquy about the risks of self-representation after he had begun to represent himself.  But Kinney does not present any authority indicating that engaging in such a colloquy with a self-represented defendant violates the right to self-representation.  Further, a trial court can violate a defendant's Sixth Amendment right to assistance of counsel if it improperly allows a defendant to represent himself.  *See City of Bellevue v. Acrey*, 103 Wn.2d 203, 211-12, 691 P.2d 957 (1984) (reversing conviction after the trial court allowed the defendant to represent himself when the defendant had not made a valid waiver of his right to counsel).  The trial court must ensure that a defendant who represents himself understands at a

minimum (1) the severity of the charges, (2) the maximum possible penalties for the crime, and (3) the existence of technical and procedural rules governing the presentation of a defense. *State v. James*, 138 Wn. App. 628, 636, 158 P.3d 102 (2007). And the trial court should engage in discussion with the defendant for as long and as thoroughly as the circumstances demand. *Id.* Therefore, the trial court's renewed colloquy did not violate Kinney's right to self-representation.

Further, the trial court's colloquy demonstrated that Kinney was equivocal about asserting his right to represent himself. Kinney agonized over the decision. And he ultimately decided to allow defense counsel to represent him. Based on Kinney's statements, the trial court reappointed defense counsel to represent Kinney and Kinney acquiesced. Therefore, the trial court did not violate Kinney's right to self-representation at that hearing.

Third, Kinney argues that the trial court violated his right to self-representation by denying his request to represent himself on March 18, the day before trial. However, the record shows once again that Kinney was equivocal about representing himself. After the trial court again discussed the seriousness of the risks of self-representation, Kinney stated that he would proceed to trial with defense counsel representing him. Because Kinney changed his mind, the trial court never denied Kinney's request to represent himself. Therefore, the trial court did not violate Kinney's right to self-representation at that hearing.

Accordingly, we hold that the trial court did not deny Kinney's right to self-representation.

3.  Conclusion

Because Kinney's requests were equivocal and ultimately withdrawn, we hold the trial court did not deny Kinney's right to self-representation. Therefore, Kinney cannot show that his

guilty plea was involuntary based on a denial of his self-representation right and he has failed to meet his burden of proving any manifest injustice as required under CrR 4.2(f). Accordingly, we hold that the trial court did not abuse its discretion in denying Kinney's motion to withdraw his guilty plea.

B.      LEGAL FINANCIAL OBLIGATIONS

Kinney argues that the trial court erred in imposing discretionary LFOs for court-appointed attorney fees and discretionary incarceration costs without first assessing his ability to pay them. The State argues that the trial court made a sufficient inquiry. We agree with Kinney that the trial court did not properly assess Kinney's ability to pay.

RCW 10.01.160(1)[5] authorizes the trial court in its discretion to order payment of certain LFOs. Before imposing discretionary LFOs, the trial court must make an individualized inquiry into the defendant's present and future ability to pay. RCW 10.01.160(3); *State v. Blazina*, 182 Wn.2d 827, 837-38, 344 P.3d 680 (2015). "The record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay. Within this inquiry, the court must also consider important factors . . . such as incarceration and a defendant's other debts, including restitution, when determining a defendant's ability to pay." *Blazina,* 182 Wn.2d at 838. Including boilerplate language in the judgment and sentence stating that the defendant has an ability to pay does not satisfy this requirement. *Id.*

Under RCW 9.94A.760(2), a trial court also may require an offender to pay the costs of incarceration if the offender has the ability to pay those costs at the time of sentencing.

---

[5] RCW 10.01.160 has been amended since the events of this case transpired. *See* Laws of 2015, 3d Spec. Sess., ch. 35, § 1. Because these amendments do not impact the statutory language relied on by this court, we refer to the current statute.

Incarceration costs are discretionary and require the same inquiry into the ability to pay as described in *Blazina*. *State v. Leonard,* 184 Wn.2d 505, 507-08, 358 P.3d 1167 (2015).

Here, the record shows that the trial court stated that it was imposing LFOs and that Kinney was "able-bodied and has the ability to work and make periodic payments on financial obligations imposed by the Court." RP (July14, 2015) at 54-55. However, the trial court never inquired into Kinney's work history, debts, disability, and ability to hold a job upon release. And the trial court suggested that Kinney could make LFO payments from his social security benefits, but those benefits generally are suspended while an offender is in prison. 42 U.S.C. §402(x)(1)(A)(i). Therefore, we hold that the trial court failed to make an adequate individualized inquiry into Kinney's ability to pay LFOs.

Further, there are facts in the record indicating that Kinney may not have the ability to pay. Kinney was 62 years old at sentencing and sentenced to 51 months of confinement. The record shows that Kinney was a Vietnam War veteran receiving social security disability of about $650 per month and receiving food assistance. And Kinney was found indigent in the trial court.

Accordingly, we remand to the trial court for reconsideration of discretionary LFOs and incarceration costs.

C.    APPELLATE COSTS

Kinney argues that we decline to follow the holding of Division One of this court in *State v. Sinclair*, which suggested that appellants must raise the issue of appellate costs in their opening brief. 192 Wn. App. 380, 389-90, 367 P.3d 612, *review denied*, 185 Wn.2d 1034

No. 47867-6-II

(2016).  Kinney argues that the issue of appellate costs is not before this court until after it makes its ruling.  We agree.

In *State v. Grant*, 196 Wn. App. 644, 650-51, 385 P.3d 184 (2016), we held that an appellant could challenge the imposition of appellate costs for the first time after the State submitted a cost bill.  Therefore, we hold that Kinney was not required to request a waiver of appellate costs in his brief and any request for waiver of those costs can be addressed in a cost bill objection when and if the State files a cost bill.

CONCLUSION

We affirm the trial court's denial of Kinney's motion to withdraw his guilty plea, but we remand to the trial court for reconsideration of discretionary LFOs and incarceration costs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, A.C.J.


We concur:

_____
WORSWICK, J.

_____
SUTTON, J.

13