**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION  II**

| | |
|---|---|
| STATE OF WASHINGTON, | No.  46734-8-II |
| Respondent, | |
| v. | PUBLISHED OPINION |
| SPENCER GRANT, | |
| Appellant. | |

BJORGEN, C.J. — Spencer Grant moves to modify the commissioner's ruling awarding appellate costs to the State.  He argues (1) that his challenge to appellate costs is timely raised in a motion to modify the commissioner's ruling, and (2) that assuming his challenge is timely, we should waive imposition of appellate costs in his case.  We hold that Grant's challenge to appellate costs following his objection to the cost bill is timely, and we waive Grant's appellate costs because of his continued indigent status.  Accordingly, we grant the motion to modify the commissioner's ruling and waive imposition of appellate costs against Grant.

### FACTS

In an unpublished opinion, we affirmed Grant's convictions for failure to register as a sex offender and for bail jumping.  *State v. Grant*, noted at 192 Wn. App. 1067 (2016).  After our decision was filed, the State submitted a cost bill for appellate costs pursuant to RAP 14.4 and RCW 10.73.160.  Grant filed an objection to the State's cost bill under RAP 14.5.  The commissioner awarded appellate costs to the State as the prevailing party, reasoning that he had no discretion to waive costs under RAP 14.2 in light of Division One's opinion in *State v. Sinclair*, 192 Wn. App. 380, 367 P.3d 612, *review denied*, 185 Wn.2d 1034 (2016).  Grant filed a

motion to modify the commissioner's order under RAP 17.7, and we referred the motion to a panel of judges for decision.

## ANALYSIS

### I. APPELLATE COSTS MAY BE CHALLENGED IN A MOTION TO MODIFY THE COMMISSIONER'S AWARD FOLLOWING AN OBJECTION TO THE COST BILL

Grant argues that his motion to modify the commissioner's ruling following his objection to the State's cost bill is a timely and appropriate means to challenge imposition of appellate costs. We agree.

### 1. Standard of Review/Legal Principles

Under RCW 10.73.160(1), appellate courts "'*may* require an adult offender convicted of an offense to pay appellate costs.'" *Sinclair*, 192 Wn. App. at 385 (emphasis in original) (quoting RCW 10.73.160(1)). The statute provides that appellate costs "shall be requested in accordance with . . . Title 14 of the rules of appellate procedure." RCW 10.73.160(3). RAP 14.2, in turn, states that, "[a] commissioner or clerk of the appellate court *will* award costs to the party that substantially prevails on review, unless the appellate court directs otherwise in its decision terminating review." (Emphasis added.) We review a commissioner's ruling on a motion to modify de novo. *State v. Vazquez*, 95 Wn. App. 12, 15, 972 P.2d 109 (1999).

### 2. *Sinclair* and RAP 14.2

Grant argues that we should permit a non-prevailing appellant to raise objections to appellate costs in a motion to modify a commissioner's ruling after filing an objection to the cost bill. In his ruling on the cost bill, the commissioner, following Division One's opinion in *Sinclair*, 192 Wn. App. 380, stated that he lacked discretion to modify or reduce an indigent offender's appellate costs under RAP 14.2. In *Sinclair*, the defendant lost on appeal and filed a motion for reconsideration opposing the State's cost bill. *Id*. at 386-87. The *Sinclair* court held

that a party may properly raise a challenge to appellate costs in either its appellate brief or a motion for reconsideration. *Id.* at 385-87, 389-90. The court declined to rely solely on RCW 10.73.160(4) as a means to challenge appellate costs, which would require an offender to seek remission of costs from the trial court. *Id.* at 388. The *Sinclair* court reasoned that because RCW 10.73.160(1) vests discretion to impose appellate costs in the appellate courts, those courts should not refrain from or delegate the exercise of that discretion. *Id.* at 389-90.

While the *Sinclair* opinion clarified that an appellate court may consider a challenge to appellate costs if raised in briefing or a motion for reconsideration, the opinion did not make those methods the exclusive means of raising the issue of appellate costs. To the contrary, the court expressly declined to consider "whether the appellate court has discretion to deny or substantially reduce an award of costs when asked to do so by a motion to modify a commissioner's award of costs under RAP 14.2." *Id*. at 390 n.2. Similarly, even though the court opined that a rule change requiring the State to brief a request for costs would not be unduly burdensome, the court also noted that "[t]he State is not obliged to request an award of costs in its appellate briefs." *Id*. at 385. These elements of its analysis show that *Sinclair* did not hold that appellate briefing and reconsideration were the exclusive vehicles for opposing an award of appellate costs.

On the other hand, RAP 14.2 states that

[a] commissioner or clerk of the appellate court will award costs to the party that substantially prevails on review, unless the appellate court directs otherwise in its decision terminating review.

From this text, one could reasonably interpret RAP 14.2 strictly, to mean that in the absence of direction to the contrary in the appellate court decision, appellate costs must be awarded to the prevailing party. Just as reasonably, though, one could infer that this provision is limited to its

3

express subject, actions by the clerk or commissioner, because it says nothing about the modification of those decisions.

By arguing that his motion to modify is timely, Grant implicitly asks us to adopt a liberal construction of RAP 14.2. In interpreting court rules, as with statutes, "we strive to determine and carry out the drafter's intent." *State v. Stump*, 185 Wn.2d 454, 460, 374 P.3d 89 (2016) (citations omitted). "We determine that intent by examining the rule's plain language not in isolation but in context, considering related provisions, and in light of the statutory or rule-making scheme as a whole." *Id.* Furthermore, our Supreme Court has noted that "RAP 14.2 is not the exclusive means for dealing with all situations resulting in an affirmance of a trial court decision," and that "[t]he RAPs are instead designed to allocate appellate costs in a fair and equitable manner depending on the realities of the case." *Id.* at 461. Finally, we may invoke RAP 1.2(c) to waive or alter the provisions of the rules of appellate procedure in order to serve the ends of justice.

The strict interpretation of RAP 14.2 would require a defendant to object to appellate costs either in briefing, before even knowing which party prevails, or on reconsideration, when the defendant may or may not know if the State is requesting costs. Only with the commissioner's decision is there an order imposing costs on a defendant who did not prevail on appeal.[1] That, then, is a fair, logical, and appropriate time to require a defendant to challenge those costs, although a defendant may continue to properly raise the issue of appellate costs in briefing or a motion for reconsideration consistently with *Sinclair*.[2]

---

[1] Both a motion for reconsideration and an objection to cost bill generally must be filed within 20 days of the decision terminating review. RAP 12.4, 14.4, 14.5.

[2] A new proposed amendment to RAP 14.2 is anticipated from the Supreme Court.

Our Supreme Court has acknowledged the difficult issues surrounding the assignment of costs to indigent defendants. In *State v. Blazina*, the court catalogued the potential impediments to meaningful post-incarceration reintegration caused by burdening indigent defendants with costs that will only swell with interest under a low payment plan. 182 Wn.2d 827, 344 P.3d 680 (2015). The court explained that indigent offenders are disproportionately weighed down by legal costs compared to wealthier offenders, who are less likely to fall behind on payments and become subject to additional interest and fees. *Id*. at 836. Once encumbered by legal costs, an indigent offender is likely to encounter problems securing employment, housing, or financing because background checks will indicate an active court record for unpaid costs. *Id*. at 837. These difficulties are similar to, if not the same as, the difficulties implicated in Grant's challenge.

As already noted, a motion to modify is generally the first opportunity to challenge an award of appellate costs after the award has been made. That timing, along with the problems caused by levying court costs on the indigent, the limited holding of *Sinclair*, and the legislative intent that the appellate court exercise discretion over imposing appellate costs, all counsel that RAP 14.2 should be read to allow Grant to challenge appellate costs for the first time in his motion to modify the commissioner's ruling where he has previously filed an objection to the cost bill.

In addition, we have authority to determine "costs in all cases *after* the filing of a decision terminating review." RAP 14.1(a) (emphasis added). To the extent that a commissioner ruling on costs may be appealed to the appellate court under RAP 17.7, we thus retain ultimate discretion as to the imposition of costs, consistent with the legislative intent of RCW 10.73.160(1). For all of these reasons, we hold that Grant's challenge to appellate costs in

a motion to modify a commissioner's ruling after having filed an objection to the cost bill is timely.

## II. APPELLATE COSTS ARE WAIVED

Grant argues that we should decline to impose appellate costs in his case. We agree.

Under RCW 10.73.160(1), we have broad discretion whether to grant or deny appellate costs to the prevailing party. *State v. Nolan*, 141 Wn.2d 620, 626, 8 P.3d 300 (2000). We retain discretion to determine appellate costs after the decision terminating review. RAP 14.1(a). Grant requests that we exercise that discretion to waive his appellate costs.

Ability to pay is an important consideration in the discretionary imposition of appellate costs, although it is not the only relevant factor. *Sinclair*, 192 Wn. App. at 389. In the context of trial court legal financial obligations (LFOs), our Supreme Court has recognized that if one meets the GR 34 standards for indigency, courts should seriously question that person's ability to pay LFOs. *Blazina*, 182 Wn.2d at 839. Once indigency is established, the RAPs establish a presumption of continued indigency throughout review. *Sinclair*, 192 Wn. App. at 393. Specifically, RAP 15.2(f) states that:

> [a] party and counsel for the party who has been granted an order of indigency must bring to the attention of the trial court any significant improvement during review in the financial condition of the party. The appellate court will give a party the benefits of an order of indigency throughout the review unless the trial court finds the party's financial condition has improved to the extent that the party is no longer indigent.

Grant received appointed counsel in the trial court and was found indigent at the end of his trial. In considering appellate costs, *Sinclair* held, as a general matter, that "the imposition of costs against indigent defendants raises problems that are well documented in *Blazina*-e.g., 'increased difficulty in reentering society, the doubtful recoupment of money by the government, and inequities in administration.'" 192 Wn. App. at 391 (quoting *Blazina*, 182 Wn.2d at 835).

With Grant's presumed continued indigency, the imposition of appellate costs would threaten these same evils. Therefore, we elect to exercise our discretion and decline to impose appellate costs on Grant.

## CONCLUSION

Grant's motion to modify the commissioner's ruling is granted. His motion to modify, filed after having objected to the cost bill,[3] was timely, and we decline to require Grant to pay appellate costs.

_Bjorge, C.J._

BJORGEN, C.J.

We concur:

_Johanson, J._

JOHANSON, J.

_Lee, J._

LEE, J.

---

[3] We do not decide whether Grant's challenge would have been timely in the absence of an objection to the cost bill.