# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48047-6-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| STEVEN CRAIG POWELL, | |
| Appellant. | |

MAXA, A.C.J. – Steven Powell appeals his conviction and sentence for second degree possession of depictions of a minor engaged in sexually explicit conduct. The conviction was based on the seizure during the execution of a search warrant of images of children who were his former neighbors.

We hold that (1) Powell was not entitled to a *Franks*[1] hearing on his challenge to portions of the probable cause affidavit supporting the search warrant because he failed to show that the challenged portions were necessary for the finding of probable cause; (2) the trial court did not err in admitting a passage from his journal that was written before the images were taken stating that he liked to take video shots of pretty girls and use them for self-stimulation, because the

---

[1] *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

evidence was relevant and not overly prejudicial; (3) Powell's ineffective assistance of counsel claims have no merit; and (4) the trial court did not err in ordering his sentence to run consecutively instead of concurrently with his sentence for earlier voyeurism convictions. Accordingly, we affirm Powell's conviction and sentence.

FACTS

Powell's son Joshua Powell was married to Susan Powell, who disappeared from her home in Utah in December 2009 under suspicious circumstances. Joshua was a person of interest in Susan's disappearance.

*Search Warrant*

After Susan's disappearance, Joshua and his two young children moved from Utah to Washington to live with Powell. While investigating Susan's disappearance, Utah police found a journal belonging to Susan at her workplace. Powell and Joshua then announced to media that they had numerous journals belonging to Susan that contained over 2,000 pages of additional journal entries. Powell and Joshua also indicated that the journals they possessed contained information important to the investigation.

Working with Utah police, Detective Gary Sanders of the Pierce County Sheriff's Department prepared an affidavit requesting a warrant to search Powell's home and seize physical and digital copies of Susan's journals. Sanders's affidavit provided background information on the investigation into Susan's disappearance, including searches and interviews that involved Powell. The affidavit also described how Powell had told the media and law enforcement that he possessed journals written by Susan and stated that the journals could

contain useful information for the investigation into Susan's disappearance. The requested search warrant was granted on August 24, 2011.

On August 25, officers from Pierce County and Utah executed the search warrant on Powell's home. They seized computers, hard drives, discs, a camcorder, videos, and notebooks during the search. One disc seized from Powell's bedroom contained numerous photos and videos carefully cataloged into folders. One such folder was titled "Neighbors," which contained subfolders titled "Open Window in Back House," "Taking Bath-1," and "Taking Bath-2." Report of Proceedings (RP) at 123.

The subfolders contained numerous images of young girls, including two who were later identified as Powell's 8-year-old and 10-year-old neighbors. The images were taken through Powell's window, looking into the bathroom of the neighboring house. They depicted the girls in the bathtub, going to the bathroom, and changing clothes. Some images captured and focused in on the young girls' exposed genital regions.

*Voyeurism Conviction and Appeal*

On September 22, 2011, the State charged Powell with 14 counts of voyeurism and one count of second degree possession of depictions of a minor engaged in sexually explicit conduct. The trial court dismissed the second degree possession charge before trial, and Powell was convicted of all of the voyeurism charges. *State v. Powell*, 181 Wn. App. 716, 722, 326 P.3d 859 (2014). The trial court vacated two of the convictions on double jeopardy grounds and sentenced Powell on the remaining convictions, imposing a sentence of 30 months of confinement.

Powell appealed and the State cross-appealed. *Id.* This court affirmed Powell's voyeurism convictions and reversed the trial court's pretrial dismissal of the second degree

possession charge. *Id.* at 729. While the appeal was pending, Powell completed his sentence for the voyeurism convictions and was released from confinement on March 23, 2014.

*Request for* Franks *Hearing*

On October 27, 2014, the State re-filed the second degree possession of depictions of a minor engaged in sexually explicit conduct charge. Powell filed a motion to set aside the search warrant and suppress evidence. He argued that the affidavit supporting the warrant contained material misstatements and omissions and requested a *Franks* hearing. After hearing argument, the trial court concluded that Powell had failed to make the necessary showing to receive a *Franks* hearing. The court ruled that Powell had failed to show that Sanders made misstatements or omissions and that even if there were misstatements and omissions, they were not material to determination of probable cause.

*Motion in Limine – Journal Entry*

Powell filed a motion in limine to exclude his journals from being introduced as evidence at trial. Powell argued that the journals were more prejudicial than probative and would constitute impermissible propensity evidence under ER 404(b). The State argued that one excerpted passage written on August 17, 2004 should be admissible. The passage stated: "I enjoy taking video shots of pretty girls in shorts and skirts, beautiful women of every age. I sometimes use those images for self-stimulation." Clerk's Papers (CP) at 257.

The State argued the passage was relevant to show Powell was the one who took the images of the neighbor girls, his motivation for taking them, and his intent to use them for sexual gratification. The trial court granted Powell's motion in limine in part, ruling that the journals

were generally irrelevant and therefore inadmissible. But the court ruled that the single passage the State offered was admissible because it was relevant and more probative than prejudicial.

*Conviction and Sentence*

The jury convicted Powell of second degree possession of depictions of a minor engaged in sexually explicit conduct. The trial court sentenced Powell to 60 months to run consecutively with his earlier sentence on the voyeurism convictions.

Powell appeals his conviction and sentence.

## ANALYSIS

A.    REQUEST FOR *FRANKS* HEARING

Powell argues that the trial court erred in denying his request for a *Franks* hearing because he met his burden of making a preliminary showing that the search warrant affidavit contained material misstatements and omissions. We disagree.

    1.    Legal Principles

Both the Fourth Amendment to the United States Constitution and article 1, section 7 of the Washington Constitution require probable cause to support the issuance of a search warrant. *See State v. Martines*, 184 Wn.2d 83, 90, 355 P.3d 1111 (2015) (Fourth Amendment); *State v. Ollivier*, 178 Wn.2d 813, 846, 312 P.3d 1 (2013) (article 1, section 7). "Probable cause exists when the affidavit in support of the search warrant 'sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime may be found at a certain location.' " *Ollivier*, 178 Wn.2d at 846-47 (quoting *State v. Jackson*, 150 Wn.2d 251, 264, 76 P.3d 217 (2003)).

In *Franks v. Delaware*, the United States Supreme Court held that after a search warrant has been issued, a defendant is entitled to an evidentiary hearing – a "*Franks* hearing" – regarding the veracity of factual allegations in the search warrant affidavit if (1) the defendant makes a "substantial preliminary showing" that the affiant knowingly and intentionally or with reckless disregard for the truth included a false statement in the warrant affidavit, and (2) the allegedly false statement is necessary to the finding of probable cause. 438 U.S. 154, 155-56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). This test also applies to material omissions of fact. *State v. Chenoweth*, 160 Wn.2d 454, 469, 158 P.3d 595 (2007).

> Our Supreme Court has stated the test for a *Franks* hearing as follows:
>
> A search warrant may be invalidated if material falsehoods were included in the affidavit intentionally (deliberately) or with reckless disregard for the truth, or if there were deliberate or reckless omissions of material information from the warrant. If the defendant makes a substantial preliminary showing of such a material misrepresentation or omission, the defendant is entitled to a *Franks* evidentiary hearing.

*Ollivier*, 178 Wn.2d at 847 (citations omitted). Under this test, the defendant must show that a false statement or omission in a search warrant affidavit was both intentional and material. *See State v. Garrison*, 118 Wn.2d 870, 872-73, 827 P.2d 1388 (1992). If either requirement is not satisfied, the defendant is not entitled to a *Franks* hearing. *Id.* at 873.

If the defendant makes a substantial preliminary showing of a misstatement or omission that is intentional or reckless and material, then the court must hold a *Franks* hearing. *Ollivier*, 178 Wn.2d at 847. At the hearing the defendant bears the burden of proving the material misstatements or omissions by a preponderance of the evidence. *State v. Cord*, 103 Wn.2d 361, 367, 693 P.2d 81 (1985). If the defendant is successful in doing so, the trial court must strike the misrepresentations and include the omissions and determine whether the affidavit as modified

still supports a finding of probable cause. *Ollivier*, 178 Wn.2d at 847. If it does not, the warrant is invalidated and the evidence is suppressed. *Id.*

    2.   *Franks* Analysis

Powell argues that Sanders's warrant affidavit contained three misstatements or omissions: (1) indicating that Powell would not provide copies of the journals to law enforcement, (2) creating the impression that Powell obstructed the investigation into Susan's disappearance and did not cooperate with law enforcement, and (3) failing to acknowledge that Joshua's children were made available for interviews in Washington. We hold that even if these portions of the affidavit constituted misrepresentations or omissions, Powell was not entitled to a *Franks* hearing because he did not show that these portions were necessary to the probable cause determination.

To be entitled to a *Franks* hearing, the defendant must make a substantial preliminary showing that the alleged misrepresentations or omissions were material – necessary to the finding or probable cause. *Franks*, 438 U.S. at 155-56; *Ollivier*, 178 Wn.2d at 847. To determine materiality, the trial court must remove the challenged false statements from the affidavit and insert the challenged omissions into the affidavit. *Garrison*, 118 Wn.2d at 873. If the information in the "altered" affidavit remains sufficient to support a finding of probable cause, the defendant is not entitled to a *Franks* hearing. *Id.*

For this inquiry, it is not enough that the misrepresentation or omission might have affected the magistrate's probable cause determination. *Id.* at 874. A defendant is entitled to a *Franks* hearing only if the modified affidavit could not have supported a finding of probable cause. *Id.*

Powell does not even attempt to argue that Sanders's affidavit would have been insufficient to establish probable cause if all the alleged misrepresentations were removed and all the alleged omissions were inserted. Even if we were to replace the alleged misstatements and add the alleged omissions to Sanders's affidavit, the resulting affidavit still would have been more than sufficient to support probable cause and the issuance of a search warrant. The core facts of the warrant were that Powell had numerous journals written by Susan that were likely to contain information useful to the investigation into her disappearance. None of the alleged misstatements or omissions change the core facts.

Accordingly, we hold that the trial court did not err in denying Powell's request for a *Franks* hearing.

B.     ADMISSION OF JOURNAL PASSAGE

Powell argues that the trial court erred in admitting evidence consisting of two sentences written in Powell's journal: "I enjoy taking video shots of pretty girls in shorts and skirts, beautiful women of every age. I sometimes use those images for self-stimulation." CP at 257. Powell argues that the comment in his journal was inadmissible under both ER 403 and ER 404(b). We disagree.

1.    Standard of Review

We review a trial court's evidentiary rulings for an abuse of discretion. *State v. Slocum*, 183 Wn. App. 438, 449, 333 P.3d 541 (2014). A trial court abuses its discretion by issuing a decision that is manifestly unreasonable or based upon untenable grounds or reasons. *Id.* A decision is manifestly unreasonable if it takes a view that no reasonable person would take. *Id.*

2.    Admissibility Under ER 403

ER 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." And relevant evidence is generally admissible. ER 402.

However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." ER 403. Evidence may be unfairly prejudicial when it excites an emotional rather than a rational response by the jury or when it promotes a decision on an improper basis. *State v. Haq*, 166 Wn. App. 221, 261, 268 P.3d 997 (2012). The trial court has considerable discretion to consider what evidence is relevant and to balance its possible prejudicial impact against its probative value. *State v. Barry*, 184 Wn. App. 790, 801, 339 P.3d 200 (2014).

a.    Probative Value

First, Powell argues that the journal entry has little probative value because there is not enough similarity between the journal passage and the crime charged. Powell asserts that there are differences between the journal entry and the charged crime because the journal entry refers to women in shorts and skirts while the charged crime involved exposed genital areas, and the journal entry refers to women of all ages while the charged crime involved minors.

However, the journal passage did have probative value because it indicated "I enjoy taking video shots of pretty girls," which is probative of the fact that it was Powell who took the images found on his computer. CP at 257. Sanders testified that the images on Powell's computer were taken from a video recording, and a video camera was found in Powell's

9

bedroom. The passage also indicated that Powell used images of "pretty *girls*" and "beautiful women *of every age*." CP at 257 (emphasis added). So although Powell argues that the journal passage was not specific to minors, it differentiated between girls and women. The passage also described women of every age, which would include minors.

Finally, the passage noted that Powell used the images for "self-stimulation." CP at 257. An element of the charged offense was that Powell possessed the images "for the purpose of sexual stimulation of the viewer." RCW 9.68A.011(4)(f). The journal passage had probative value because it tended to make it more probable that Powell had the requisite intent – that he used the images for his own sexual gratification.

Powell argues that the journal passage essentially was propensity evidence, which cannot be used to prove intent. *See State v. Wade*, 98 Wn. App. 328, 334-35, 989 P.2d 576 (1999). But the passage was not admitted to show that Powell had a propensity for using images of girls for self-stimulation. Instead, it generally explained what motivated Powell to take images of pretty girls and created an inference that he used the images for the purpose he intended.

Second, Powell argues that the journal passage's probative value was diminished by the fact that although the passage was dated August 17, 2004, the images at issue were not taken until sometime in 2006 or 2007 (and Powell was charged with possession of the depictions in 2011). He argues that the passage was too remote to be probative of intent.

Powell cites two cases for support, but both are clearly distinguishable from the present case. In *State v. Acosta*, the court ruled that prior convictions were not relevant to the defendant's state of mind regarding the charged crime because the prior convictions were between two and 10 years old and did not require a specific intent or state of mind. 123 Wn.

App. 424, 435, 98 P.3d 503 (2004). In *State v. Sargent*, the court determined that defendant's argument with his wife eight months before her murder was too remote to be probative of the defendant's intent on the night of the murder. 40 Wn. App. 340, 352, 698 P.2d 598 (1985).

The evidence offered in *Acosta* and *Sargent* did not clearly indicate the defendant's state of mind or intent at the time of the prior convictions or prior argument. Therefore, the evidence was of little value in determining the defendant's state of mind or intent at the later time of the crime. But here Powell's journal passage is unlike the prior convictions in *Acosta* or the earlier argument in *Sargent* because the journal passage offers insight into Powell's own thoughts and feelings. The journal passage stated plainly what Powell liked to do (take video shots of pretty girls) and why (for self-stimulation). Therefore, the journal passage does have probative value related to Powell's intent for taking the images of his neighbors, and the passage of time does not diminish the probative value.

We agree with the trial court that the journal passage had significant probative value under the facts of this case.

b. Balancing

The journal passage indicated that Powell took video shots of girls and women and used them for self-stimulation. Because of the nature of this conduct, admitting the passage created a danger of unfair prejudice. But given the strong probative value of the evidence, we cannot say that the trial court abused its discretion in ruling that the probative value was not substantially outweighed by the danger of unfair prejudice.

Accordingly, we hold that the trial court did not abuse its discretion when it refused to exclude the journal passage under ER 403.

11

3.    Admissibility Under ER 404(b)

Under ER 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  However, this evidence may be admissible for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  ER 404(b).  The State argues and the trial court found that the journal entry was admissible to show that Powell took the images at issue (identity) and that the purpose of taking the images was for sexual gratification (motive and intent).

Before a trial court admits evidence under ER 404(b), it must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for admitting the evidence, (3) determine the relevance of the evidence to prove an element of the crime, and (4) weigh the probative value of the evidence against its prejudicial effect under ER 403.  *State v. Gunderson,* 181 Wn.2d 916, 923, 337 P.3d 1090 (2014).

Powell does not argue that the trial court failed to make the required findings.  Instead, he argues that the journal entry was not relevant to show identity or intent and that the prejudicial effect of that evidence outweighs any relevance.  We already addressed and rejected these arguments in our ER 403 analysis.  Therefore, we hold that the trial court did not err in admitting the journal evidence under ER 404(b).

C.    STATEMENT OF ADDITIONAL GROUNDS CLAIMS

1.    Ineffective Assistance of Counsel

Powell argues that his defense counsel was ineffective for failing to investigate whether law enforcement was making deceitful statements and committing perjury, for failing to present

evidence that law enforcement made false statements, and for failing to respond to the State's

arguments at trial.[2]  We disagree.

We review claims of ineffective assistance of counsel de novo.  *State v. Hamilton*, 179

Wn. App. 870, 879, 320 P.3d 142 (2014).  To prevail on an ineffective assistance of counsel

claim, the defendant must show both that (1) defense counsel's representation was deficient and

(2) the deficient representation prejudiced the defendant.  *State v. Grier*, 171 Wn.2d 17, 32-33,

246 P.3d 1260 (2011).  Representation is deficient if after considering all the circumstances, it

falls below an objective standard of reasonableness.  *Id.* at 33.  Prejudice exists if there is a

reasonable probability that except for counsel's errors, the result of the proceeding would have

been different.  *Id.* at 34.

We begin with a strong presumption that counsel's representation was effective.  *Id.* at

33.  To demonstrate deficient performance the defendant must show that, based on the record,

there are no legitimate strategic or tactical reasons for the challenged conduct.  *State v. Emery*,

174 Wn.2d 741, 755, 278 P.3d 653 (2012).  The law affords trial counsel wide latitude in the

choice of tactics.  *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 736, 16 P.3d 1 (2001).

Powell argues that defense counsel should have investigated Powell's concerns that law

enforcement officers were making false statements and should have accused them of committing

---

[2] Powell also make numerous claims that involve his earlier trial and convictions on the voyeurism charges, including that defense counsel (1) failed to investigate Powell's concerns about law enforcement making false statements and (2) made a statement in opening regarding the trustworthiness of law enforcement.  These claims are outside the scope of our review because they concern a different trial and conviction than the one before us.  Powell also argues error based on the fact that he never received a copy of the opening statements from the voyeurism trial.  That argument also is outside the scope of our review.

perjury. However, counsel did investigate statements made by law enforcement in support of the search warrant and filed a motion to set aside the warrant on the basis that the supporting affidavit contained misstatements and omissions. In support of the motion to set aside the warrant, defense counsel offered various interviews with law enforcement officers conducted by the defense investigator.

And defense counsel's decision to not argue perjury at trial was objectively reasonable. There was no clear evidence that law enforcement officers knowingly made false statements under oath, and making a perjury accusation would not have benefitted Powell's defense. Further, defense counsel did challenge the accuracy of law enforcement officers' statements and vigorously cross-examined their testimony.

Powell also argues that defense counsel was generally ineffective for failing to respond to the State's arguments. Powell asserts that defense counsel was distracted or otherwise unwilling to respond. According to Powell, he asked defense counsel if he was going to respond to matters at trial and defense counsel gave the impression that he was not interested. However, that exchange is not in the trial transcript. We cannot consider matters outside the record. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) ("If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition.").

Powell does not provide any further detail about his defense counsel's failure to respond to arguments, and he states that he is unable to do so because he was not provided copies of the trial transcript. Although RAP 10.10(c) does not require that a SAG refer to the record or cite

14

authority, the rule does require an appellant to inform us of the "nature and occurrence of the alleged errors." There is not enough information for us to consider this SAG claim.

We hold that Powell's ineffective assistance of counsel claims fail.

2. Consecutive Sentence

Powell argues that the trial court improperly imposed an exceptional sentence when it ordered his sentence to run consecutively instead of concurrently with his sentence for the earlier voyeurism convictions. We disagree.

Generally, sentences on multiple current offenses are served concurrently, rather than consecutively. RCW 9.94A.589(1)(a)[3]; *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 507, 301 P.3d 450 (2013). And ordering sentences on multiple current offenses to run consecutively constitutes an exceptional sentence. RCW 9.94A.589(1)(a), .535. "Current offenses" are convictions that are entered or sentenced on the same day. RCW 9.94A.525(1); *see also Finstad*, 177 Wn.2d at 507. But a when a defendant is sentenced for a single current offense that is a felony committed while the defendant was not under sentence for conviction of a felony, the sentence may run consecutively when the court expressly orders it. RCW 9.94A.589(3); *State v. Champion*, 134 Wn. App. 483, 488, 140 P.3d 633 (2006).

Powell meets the requirements of RCW 9.94A.589(3). Second degree possession of depictions of a minor engaged in sexually explicit conduct is a felony, and Powell committed the crime when he was not under sentence for the conviction of any other felony. The sentence for

---

[3] RCW 9.94A.589 together with RCW 9.94A.535 and RCW 9.94A.525 are all sentencing statutes that have been amended since the events of this case transpired. However, these amendments do not impact the statutory language relied on by this court. Accordingly, we do not include the word "former" before RCW 9.94A.589, RCW 9.94A.535, and RCW 9.94A.525.

the voyeurism convictions was imposed after Powell committed the possession crime. Because Powell is subject to RCW 9.94A.589(3), the sentencing court had authority to impose a consecutive sentence as long as it was expressly ordered. Powell's judgment and sentence states that the sentence run "consecutive to any other time served on prior 2012 [judgment and sentence]." CP at 277.

Accordingly, we hold that the trial court did not err by imposing a consecutive sentence.

D.    APPELLATE COSTS

Powell asks that we refrain from awarding appellate costs if the State seeks them. The State has not sought appellate costs. We decline to consider the issue.

Under *State v. Grant*, a defendant is not required to address appellate costs in his or her briefing to preserve the ability to object to the imposition of costs after the State files a cost bill. 196 Wn. App. 644, 648, 385 P.3d 184 (2016). A commissioner of this court will consider whether to award appellate costs in due course under the newly revised provisions of RAP 14.2 if the State decides to file a cost bill and if Powell objects to that cost bill.

CONCLUSION

We affirm Powell's conviction and sentence.

No. 48047-6-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, A.C.J.

We concur:

_____
WORSWICK, J.

_____
SUTTON, J.

17