# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47960-5-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JEROME CEASAR ALVERTO, | |
| Appellant. | |

MAXA, A.C.J. – Jerome Ceasar Alverto was convicted of attempted first degree murder, first degree burglary, and first degree robbery for crimes committed against Stephanie Wilson, his former wife. Alverto appeals the trial court's denial of his motion for postconviction DNA (deoxyribonucleic acid) testing of a hair found at the crime scene. He argues that the trial court erred in denying his motion because the results of DNA testing of the hair, combined with other new evidence he submitted, would show his innocence.

We hold that the trial court did not err because regardless of whether DNA testing showed that the hair belonged to someone other than Alverto, it would not demonstrate Alverto's innocence. Accordingly, we affirm the trial court's order denying Alverto's motion for DNA testing.

FACTS

*Attempted Murder*

Wilson spent the evening of May 12, 2006 with her boyfriend, Eric Rogers, and then returned home. In the early morning of May 13, Wilson received a phone call from Alverto. Alverto asked Wilson about her concealed weapons permit and told her that she should not have married him. Alverto also asked Wilson if she was going to marry her boyfriend, Eric Rogers. Wilson hung up on Alverto and sent a text message to Rogers, who called her back.

Wilson then was attacked from behind. The attacker wore dark clothing, gloves, and a bandanna around his face. He hit Wilson on the head repeatedly with a gun and stated that she should not have married him. Wilson recognized the attacker as Alverto by his eyes, body, and voice.

At some point during the attack, Wilson was able to run out the front door and toward her neighbor's house. Alverto chased Wilson and shot her in the chest and then again in the hand. Wilson pretended she was dead until she heard Alverto leave, and then she continued to the neighbor's patio. But Alverto came back and shot Wilson in the back of the neck. Wilson collapsed, and Alverto grabbed her by the hair and pulled her down the patio steps onto the neighbor's lawn. He then shot Wilson twice in the head and left.

Wilson was able to reach another neighbor's house and knocked on the door. The neighbor called 911 and police arrived. The police encountered Rogers coming out of Wilson's housed and briefly detained him. Wilson told both the neighbor and the police that it was Alverto who attacked her.

*Investigation*

Police went to Alverto's residence and observed Alverto in his car wearing dark clothing, including blood stained pants. DNA from the blood on Alverto's pants was later tested and matched Wilson's DNA. Police found a notebook in the front seat of Alverto's car that appeared to be a detailed "to-do list" for attacking someone. Report of Proceedings (RP) (Aug. 13, 2008) at 788.

Forensic investigators examined the scene of Wilson's attack, including the area around her house and neighboring houses. A forensic examiner collected a hair from the sliding glass door on the neighbor's patio, but did not test it. At the hospital where Wilson was treated for her injuries, a detective directed medical staff to take Wilson's fingernail scrapings in order to collect DNA. But the police never received any fingernail scrapings from the medical staff.

Later that morning, a contractor found a duffle bag at a nearby construction site and called the police. The bag contained a handgun with blood on it, a backpack, a leather jacket, light blue respirator masks, four gas masks with filters, and a blue bandanna. In the jacket pockets were two pairs of handcuffs and Wilson's cell phone. In the backpack were three trash bags, two stocking caps, jeans, a garage door opener for Wilson's garage door, a photograph of Wilson and Rogers, and two bracelets. Wilson later identified one of the bracelets as one she had given to Alverto when they were in a relationship. Inside the pair of jeans was a piece of paper with Alverto's name on it.

*Alverto's Conviction, Appeals, and Postconviction Motions*

The State charged Alverto with attempted first degree murder, first degree burglary, and first degree robbery. The case went to trial in August 2008. The jury found Alverto guilty on all charges. The trial court sentenced him to 460.5 months in prison.

Alverto filed a direct appeal, and in July 2010 this court affirmed his conviction. *State v. Alverto*, noted at 157 Wn. App. 1011, 2010 WL 2927452, at *7. Alverto later filed a personal restraint petition which raised numerous issues, including DNA testing of the hair and fingernail scrapings. This court dismissed his petition.

Alverto then filed a motion for postconviction DNA testing of hair and fingernail scrapings in the trial court. The trial court denied his motion, ruling that he had failed to show the likelihood that the DNA evidence would demonstrate his innocence on a more probable than not basis. On appeal, a commissioner of this court ruled that Alverto's appeal was frivolous and affirmed the trial court.

*Present Motion for Postconviction DNA Testing*

In June 2014, Alverto filed a second motion for postconviction DNA testing. This motion requested DNA testing of only the hair evidence.

Alverto submitted additional evidence with his motion. First, he submitted the affidavit of Maurice Thrower, a fellow inmate. Thrower stated that around June 2006 he met a man called "E" who confessed to him that he shot his girlfriend and let her ex-husband take the blame. After meeting Alverto, Thrower believed that "E" could have been Eric Rogers. Second, Alverto submitted an unsworn opinion from handwriting examiner David Cupp that the notebook found in Alverto's car was not Alverto's handwriting, but could be Rogers' handwriting. Third,

Alverto submitted his cell phone records from May 2006 to show that he did not call Wilson before she was attacked.

In November 2014, the trial court granted Alverto's motion for postconviction DNA testing. Eight months later, the State filed a motion for reconsideration. Although the trial court noted that the State's motion for reconsideration was untimely, the trial court decided to reverse its earlier ruling granting Alverto's motion for DNA testing. The trial court stated that "if it's just the hair . . . that's all we're dealing with, I can't see how that would, on any basis, show your innocence." RP (July 30, 2015) at 12. Alverto filed a motion for reconsideration which the trial court denied.

Alverto appeals.

## ANALYSIS

A.    MOTION FOR POSTCONVICTION DNA TESTING

Alverto argues that the trial court should have granted his motion for DNA testing of the hair found on the sliding glass door at Wilson's neighbor's house because a favorable result, combined with the new evidence he submitted, would demonstrate his innocence. We disagree.

1.    Legal Principles

"RCW 10.73.170 provides a mechanism under Washington law for individuals to seek DNA testing in order to establish their innocence." *State v. Crumpton*, 181 Wn.2d 252, 258, 332 P.3d 448 (2014). Under RCW 10.73.170, a person currently imprisoned for a felony conviction may file a motion with the trial court requesting DNA testing. The trial court must grant a motion which meets certain procedural requirements and the substantive requirement that the "convicted person has shown the likelihood that the DNA evidence would demonstrate

5

innocence on a more probable than not basis." RCW 10.73.170(3); *see State v. Gentry*, 183 Wn.2d 749, 764, 356 P.3d 714 (2015).

When determining the likelihood that DNA evidence will demonstrate the convicted person's innocence, the trial court must presume that the result of testing the DNA evidence will be favorable to the convicted person. *Gentry*, 183 Wn.2d at 765. But the trial court also must evaluate the presumed favorable DNA evidence in the context of all the evidence presented at trial against the convicted person and any newly discovered evidence. *Id.* at 766-68; *State v. Riofta*, 166 Wn.2d 358, 369, 209 P.3d 467 (2009). "It is only within the context of the other evidence that the court can determine whether DNA evidence might demonstrate innocence." *Crumpton*, 181 Wn.2d at 262. The inquiry is whether "considering all the evidence from trial and assuming an exculpatory DNA test result, it is likely the individual is innocent on a more probable than not basis." *Id.* at 260.

The defendant's burden to show that favorable DNA evidence would demonstrate innocence is onerous. *Id.* at 261. "Testing should be limited to situations where there is a credible showing that it could benefit a possibly innocent individual." *Id.*

We review a trial court's denial of postconviction DNA testing for an abuse of discretion. *Gentry*, 183 Wn.2d at 764. A trial court abuses its discretion when the record does not support its decision or when it applies the wrong legal standard. *Id.*

2. Analysis

Alverto argues that DNA from the hair found on the neighbor's door must be tested because if it matches Rogers' DNA, it would exculpate Alverto. We disagree.

Alverto asserts that his new evidence – the fellow inmate's affidavit, the handwriting analysis, and his phone records – supports his theory that Rogers attacked Wilson and framed Alverto. According to Alverto, if the hair from the neighbor's door is tested and matches Rogers' DNA, that evidence would demonstrate Alverto's innocence on a more probable than not basis.

We must presume that the DNA testing would be favorable to Alverto. *Gentry*, 183 Wn.2d at 765. Under Alverto's theory, the most favorable DNA result would be that the hair provides a DNA match with Rogers.[1] However, when considering a motion for postconviction DNA testing we must look at *all* the evidence, not just the evidence supporting the defendant's theory. *Crumpton*, 181 Wn.2d at 262. In this case, even if DNA testing on the hair matches Rogers, that result would not demonstrate Alverto's innocence on a more probable than not basis.

Rogers' hair could have ended up on the neighbor's door by innocent means. Rogers was Wilson's boyfriend and he had spent time with her earlier in the evening before the attack. So it would be possible that Wilson transported his hair to the neighbor's door when she went for help. Therefore, the presence of Rogers' hair would not inculpate him as Wilson's attacker. This is not the type of case where the evidence found at the scene could only have come from the attacker. *See Gentry*, 183 Wn.2d at 767-68 (holding that the trial court did not abuse its

---

[1] Here, one favorable result would be that the DNA from the hair does not match Alverto, but the *most* favorable result to support Alverto's theory would be that the DNA from the hair matches Rogers. Case law does not specify whether the trial court must presume only that the DNA evidence does not match the defendant or whether it also must presume that the DNA matches a particular individual. We do not address this issue because DNA testing of the hair would not show Alverto's innocence even if it matched Rogers' DNA.

discretion in denying a motion for DNA testing of hair found on a murder victim's body because the hairs could have come from sources other than the perpetrator).

Alverto's new evidence, even in conjunction with DNA testing showing that the hair belonged to Rogers, cannot overcome the evidence against Alverto on a more probable than not basis. Thrower's affidavit is clearly dubious and may be treated with skepticism. *Riofta*, 166 Wn.2d at 372-373. And we need not consider the handwriting analysis because it is unsworn. *See id.* at 372. Finally, under RCW 10.73.170(3) the question is whether "*the DNA evidence would demonstrate innocence on a more probable than not basis.*" (Emphasis added.) As noted above, even DNA test results showing that the hair belonged to Rogers would be inconclusive.

Accordingly, we hold that the trial court did not abuse its discretion in denying Alverto's motion for postconviction DNA testing.

B.      APPELLATE COSTS

Alverto requests that we refrain from awarding appellate costs if the State seeks them. The State has not yet sought appellate costs. We decline to consider the issue.

Under *State v. Grant*, a defendant is not required to address appellate costs in his or her briefing to preserve the ability to object to the imposition of costs after the State files a cost bill. 196 Wn. App. 644, 650-51, 385 P.3d 184 (2016). A commissioner of this court will consider whether to award appellate costs in due course under the newly revised provisions of RAP 14.2 if the State decides to file a cost bill and if Alverto objects to that cost bill.

CONCLUSION

We affirm the trial court's order denying Alverto's motion for DNA testing.

No. 47960-5-II

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

MAXA, A.C.J.

We concur:

WORSWICK, J.

SUTTON, J.